IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 25, 2010

## TERRY LYNN RANEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. C55,800    Robert H. Montgomery, Jr., Judge**

---

**No. E2009-01966-CCA-R3-PC - Filed June 23, 2010**

---

The petitioner, Terry Lynn Raney, appeals from the denial of his petition for post-conviction relief wherein he challenged his guilty-pleaded convictions of possession with intent to sell or deliver 26 grams or more of cocaine, keeping or maintaining a dwelling place where controlled substances are used or sold, possession of drug paraphernalia, and possession of marijuana on grounds that he was denied the effective assistance of counsel. Discerning no error, we affirm the judgment of the post-conviction court. Because there is a clerical error in the judgment form for the petitioner's conviction of possession of cocaine, the case is remanded to the Criminal Court for Sullivan County for the entry of a corrected judgment form.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed and Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Richard A. Tate, Assistant District Public Defender, for the appellant, Terry Lynn Raney.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; H. Greeley Wells, District Attorney General; and Lewis Combs, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On December 7, 2007, the petitioner entered pleas of guilty to possession with intent to sell or deliver 26 grams or more of cocaine, maintaining a dwelling place where controlled substances are used or sold, possession of drug paraphernalia, and possession of marijuana in exchange for a total effective sentence of 15 years' incarceration to be served

at 100 percent by operation of law.  *See* T.C.A. § 39-17-432(d) (2006).  The facts as summarized by the State during the guilty plea hearing are as follows:

> The State's proof in #S53572 would have been, had this case gone to trial, that on March the 1st, 2007, . . . Kingsport Officers Jim Clark and others were nearby the address of 1809 1/2 Park Street, which is located in Kingsport, and within 1,000 feet of the Dobyns-Bennett school real property.
>
> They had heard what they thought was a domestic assault occurring with children present.  Went to the residen[ce] where they heard the argument coming.  Met with the [petitioner's] wife, Mrs. Raney, and asked if they could come inside.  She allowed them to come inside.
>
> Once they were in there they saw the [petitioner] moving toward a back bedroom.  The officers did a protective sweep of the area and began talking to the individuals.
>
> They obtained consent to search the property, and while they were in the search Mrs. Raney . . . told one of the officers where there was drugs, specifically cocaine.
>
> . . . . [T]he officers, during their search, found . . . a total of 37.1 grams of a substance containing cocaine.  That was confirmed by the TBI labs.  Also found .8 grams of marijuana during the search.  That was also confirmed by the TBI lab.
>
> During the search they also found digital scales, . . . razor knives that had residue of cocaine, and evidence of cocaine use there in the property.  Also they had found . . . a marijuana pipe and evidence that it'd been smoked at the property.
>
> . . . . [The petitioner] . . . . [s]tated that he'd been selling cocaine basically to support his family.  That he'd made about $1500 extra a month selling cocaine, and that the money was used specifically to pay bills for he and his . . . family.

The trial court accepted the plea agreement and imposed the agreed sentence.

On October 2, 2008, the petitioner filed a timely petition for post-conviction relief alleging that his convictions were the result of an illegal search and seizure, that the State used illegal evidence, that his guilty pleas were involuntarily entered, and that he was denied the effective assistance of counsel in his plea. Following the appointment of counsel, the petitioner filed an amended petition wherein he alleged that his counsel performed deficiently by failing to move to suppress evidence seized during the search of his residence, by failing to object when the State misstated the evidence during the plea colloquy, and by failing to meet with the petitioner a sufficient number of times prior to the entry of the pleas.

At the July 1, 2009 evidentiary hearing, the petitioner testified that after trial counsel was appointed to represent him in July 2007, he met with trial counsel only two or three times before entering the guilty pleas in this case. He stated that although he and counsel discussed the elements of the offenses with which he had been charged, counsel did not provide him with any of the discovery materials and that counsel refused to file a motion to suppress the evidence seized during the search of his residence. The petitioner claimed that neither he nor his wife gave officers permission to search the residence and explained that his wife "answered the door and they just walked right on in." He said that counsel told him that filing a suppression motion "wouldn't help" but offered no further explanation.

The petitioner said that he offered to plead guilty in exchange for the 15-year sentence as part of a "package deal" that provided his wife with a probationary sentence in exchange for her guilty pleas. He said that trial counsel never told him whether the State agreed to accept his offer of a package deal.

The petitioner testified that the prosecutor misstated the evidence during the plea colloquy, claiming that the officers had discovered digital scales when they had not, and that his counsel made no objection to the error. The petitioner explained, "I leaned over to [counsel] and I told him that there was no scales found in no evidence whatsoever. He was sitting there playing with his phone and tells me to be quiet." The petitioner said that he did not bring the error to the attention of the trial court "[b]ecause [he] was listening to [his] lawyer." The petitioner admitted that despite these issues, he told the trial court that he was satisfied with the representation he had received from trial counsel. The petitioner said that he did not complain because he "was frustrated and just wanted to get it over with." He stated that he believed trial counsel "could do a little better than what he did."

During cross-examination, the petitioner admitted that his wife received a sentence of probation as a part of her plea agreement and that he had bargained for her to receive that sentence "so she could be out there with [their] children." The petitioner also

admitted that as part of his pretrial statement to police he conceded granting consent to search his residence, but he claimed that the statement was inaccurate because he was under the influence of drugs. The petitioner claimed that he could read and write at only a "4th or 5th grade" level and that he signed the statement only because he was "fed up with" the officer conducting the interview. The petitioner agreed that "even if the digital scales was incorrect they did find other paraphernalia in the apartment," including razor blades used to chop cocaine "to snort." The petitioner also admitted that he was, in fact, selling cocaine to supplement his income.

Trial counsel testified that he was appointed to represent the petitioner in July 2007 and that he met with the petitioner at the Carter County Jail on four separate occasions and in court on two occasions prior to the entry of the petitioner's pleas. He stated that he reviewed all discovery materials with the petitioner. Counsel recalled that the petitioner told him that although he did not write the pretrial statement, the statement was his, and he had signed it. Counsel stated that the petitioner never claimed to have been under the influence during the search of his residence or the giving of his statement. Counsel testified that the discovery documents he received indicated that the Kingsport police officers involved in the search would testify that the petitioner had given consent to search his residence. He testified that he told the petitioner that it would be very difficult to succeed on a motion to suppress given the admissions in the statement and the officers' testimony. At that point, according to counsel, the petitioner asked him to "try to get a package deal together to keep his wife out of jail."

Counsel testified that the State agreed to the concept of a package deal and that he communicated the offer to the petitioner. Counsel recalled that he told the petitioner that "it was very honorable for him to work this out and keep his wife from going to jail so she could raise the children." Counsel stated that he told the petitioner that it was the practice of the Sullivan County District Attorney General's Office to revoke any plea offers upon the filing of a motion to suppress. Counsel said that the petitioner indicated that he "wanted . . . to go ahead and continue with the offer and get the offer together." Counsel stated that the petitioner never suggested that he had trouble reading or writing.

Counsel testified that he could not recall whether the petitioner mentioned the inaccuracy of the State's summation of the evidence. He agreed that even without the digital scales, other physical evidence supported the petitioner's conviction of possession of drug paraphernalia. Counsel stated that the petitioner gave no indication that he did not want to plead guilty.

Certified copies of judgment forms entered in the case of the petitioner's wife, Hunter Marie Raney, established that Mrs. Raney pleaded guilty to possession of .5 grams

or more of cocaine, maintaining a dwelling where controlled substances were used or sold, possession of drug paraphernalia, and possession of marijuana in exchange for a total effective sentence of 8 years' probation.

During cross-examination, counsel admitted that although he went over the discovery material with the petitioner, he did not provide the petitioner with a copy of the materials. He explained, "I normally don't do that unless they request it."

At the conclusion of the hearing, the post-conviction court noted that the accredited testimony of trial counsel established that the petitioner agreed to enter his pleas as part of a "package deal" that provided for a probationary sentence for the petitioner's wife. The court also noted that the petitioner's pretrial statement and his wife's granting the officers permission to search their residence was "a lot to overcome for a lawyer in a suppression hearing," and it concluded that "there's certainly a high likelihood that [the petitioner] would have probably lost on a suppression motion." In its written order denying relief, the post-conviction court reiterated these findings and added that any erroneous mention of digital scales would not have affected the voluntariness of the petitioner's plea. Finally, the court observed that the transcript of the plea submission hearing "reflects that the plea colloquy contained all appropriate questions, and the petitioner provided the appropriate responses." Based on these findings, the court concluded that the petitioner had not been denied the effective assistance of counsel.

In this appeal, the petitioner reiterates his claim that he received ineffective assistance from his trial counsel, alleging that counsel should have moved to suppress the evidence seized during the search of his residence, that counsel failed to supply him with copies of the discovery materials, and that counsel should have objected when the prosecutor erroneously listed digital scales as part of the evidence seized from the petitioner's apartment. The State submits that counsel did not perform deficiently. We agree with the State.

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective

assistance of counsel, the post-conviction petitioner must affirmatively establish first whether "the advice given, or the services rendered by the attorney, are within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To do so, he must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner is not required to demonstrate that he likely would have fared better at trial than he did by pleading guilty, although evidence of this type can be persuasive that he would have insisted on his right to a jury trial. *See Hill*, 474 U.S. at 59. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In this case, the accredited testimony of the petitioner's trial counsel established that although counsel did not provide copies of the discovery materials to the petitioner prior to his pleading guilty, counsel reviewed the materials with the petitioner.

Moreover, counsel testified that the petitioner never requested copies of the materials, and the petitioner failed to establish that his not obtaining copies caused him to plead guilty when he otherwise would have insisted upon going to trial.

Counsel also testified, and the petitioner confirmed, that the petitioner asked him to procure a "package deal" plea agreement that would allow the petitioner's wife to plead guilty to a lesser offense in exchange for a probationary sentence. Counsel stated that he secured the deal, and certified copies of Mrs. Raney's judgments established that she did, in fact, plead guilty to a lesser charge and that she received a sentence of probation. Furthermore, even if counsel should have pointed out the State's erroneous listing of digital scales among the items discovered during the search of the petitioner's apartment, the petitioner has failed to establish that he was prejudiced by this oversight. The State listed other items that qualified as drug paraphernalia and satisfied the elements of the offense of possession of drug paraphernalia.

Finally, although the petitioner complains that counsel performed deficiently by failing to file a motion to suppress, the record establishes that any suppression motion would have been unsuccessful given the petitioner's pretrial admission that he had granted the officers consent to search his residence and the officers' corroborating testimony that consent was given. Furthermore, counsel testified that, pursuant to the policy of the district attorney's office, the filing of a motion to suppress would have caused the state to revoke the plea offer, which included Mrs. Raney's probationary sentence. Under these circumstances, the petitioner has failed to establish that his counsel performed deficiently by failing to file a motion to suppress.

Accordingly, the judgment of the post-conviction court denying post-conviction relief is affirmed. Because the judgment form for the petitioner's conviction of possession of 26 grams or more of cocaine within 1,000 feet of a school lists an erroneous release eligibility percentage, however, the case must be remanded for the entry of a corrected judgment form. Code section 39-17-432 requires 100 percent service of the minimum sentence for those convicted of possessing or selling drugs in a school zone. *See* T.C.A. § 39-17-432(d). In this case, the record clearly establishes and the parties agree that the petitioner received a minimum Class A sentence of 15 years' incarceration to be served at 100 percent. The judgment form for this offense, however, reflects a release eligibility of 30 percent. Thus, the form must be amended to reflect the correct release eligibility percentage.

_____
JAMES CURWOOD WITT, JR., JUDGE